UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HANSEL L. RODRIGUEZ,

                    Plaintiff,

           -against-

TD BANK, N.A.,

                    Defendant.

26-CV-1133 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff also brings claims under state law. He sues TD Bank, N.A. By order dated March 18, 2026, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

### STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint.[1] In 2014, Plaintiff opened a credit card account with Defendant TD Bank. On or about November 16, 2024, Plaintiff sent Defendant "a formal, written notice disputing the validity of the alleged debt on the Account and demanding validation within thirty (30) days." (ECF 1, at 3.) Plaintiff alleges that Defendant "failed to conduct a reasonable investigation" of his dispute and "failed to correct or properly respond to the disputed billing entries," in violation of the TILA. (*Id.* at 6.) Plaintiff suggests that

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Defendant did not make a "good-faith investigation" of his dispute, but instead, in April 2025, reported the account as a "charge-off" to the "major consumer reporting agencies." (*Id.* at 3.)

Plaintiff further alleges that "[a]fter receiving notice of Plaintiff's dispute from Plaintiff and/or from one or more consumer reporting agencies," Defendant failed to conduct a reasonable investigation and failed to correct the inaccurate or unverifiable information, in violation of the FCRA. (*Id.* at 7.)

Due to Defendant's reporting of the account as a charge-off, Plaintiff's credit scores "fell into the 400s." (*Id.* at 3.) Plaintiff alleges that, after real estate brokers and landlords told Plaintiff that a credit score of 650 or higher "was required to even be considered for a rental application," Plaintiff "did not submit formal rental applications that would have been automatically rejected" and was unable to secure housing. (*Id.* at 4.)

On October 20, 2025, Plaintiff went to Defendant's Bronx branch office, where Branch Manager Lisette Capo "obstructed a routine notarial service by falsely claiming she needed to consult TD Bank's legal department" before notarizing Plaintiff's document, "causing an unnecessary delay" of service. (*Id.*) On November 14, 2025, Plaintiff arrived at the branch office for a 4:30 appointment with Capo, but he had to "wait for nearly an hour" while Capo spoke with another employee. (*Id.* at 5.) Plaintiff attaches to the complaint a transcription of a December 12, 2025 conversation with Capo that Plaintiff "lawfully recorded" and in which he claims Capo "admitt[ed] a conflict of interest, l[ied] about reading Plaintiff's private documents, and express[ed] contempt for her legal and professional duties."[2] (*Id.*)

---

[2] The transcript of this conversation, which Plaintiff attaches to the complaint, suggests that Plaintiff requested that Capo notarize "something against the company that [she] work[s] for," and Capo wanted to confirm with TD Bank's operations manager that company policy permitted her to do so. (*See id.* at 14-18.)

Plaintiff further alleges that he sent Defendant's leadership several "formal demand letter[s]" with respect to "the tortious conduct of Defendant's agent," to which Defendant has not responded. (*Id.*)

Plaintiff seeks money damages.

## DISCUSSION

### A.    TILA claims

Congress enacted the TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare the credit terms available and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a). The Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666-1666j, which Plaintiff invokes here, amended TILA to "protect the consumer against inaccurate and unfair credit billing and credit card practices," 15 U.S.C. § 1601(a). The FCBA applies to "open-end credit," such as a credit card or a revolving charge account that is "primarily for personal, family, household, or agricultural purposes," 12 C.F.R. § 226.2(a)(20), and it imposes on creditors "requirements . . . for the correction of billing errors." *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981).

A consumer invoking the FCBA must have notified the creditor of billing errors within 60 days of the creditor's transmission of the statement containing the alleged error. 15 U.S.C. § 1666(a). A creditor receiving such an inquiry must send a written acknowledgment within 30 days, § 1666(a)(A), and, within ninety days, either correct the cardholder's account, § 1666(a)(3)(B)(i), or send the cardholder a written explanation of why the charges in question are correctly reflected on the statement, § 1666(a)(3)(B)(ii). In order to state a claim under Section 1666, "the plaintiff must allege: (1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; and (3) failure of the card issuer to comply with the procedural requirements of Section 1666." *Beaumont v. Citibank (S. Dakota) N.A.*, No. 01-CV-3393 (DLC),

4

2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002). Moreover, "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence *of the violation.*" 15 U.S.C. § 1640(e) (emphasis added).

Here, Plaintiff alleges that he sent Defendant a letter disputing an alleged debt. In the complaint, Plaintiff does not specify the nature of the alleged debt or allege any facts suggesting that the debt constitutes a "billing error" as defined in the FCBA, § 1666(b). *See Beaumont*, 2002 WL 483431, at *3-4 (quoting Section 1666(b)'s definition of "billing error" and dismissing claim for failing to allege a billing error as defined by the statute). Moreover, even if Plaintiff did allege sufficient facts to demonstrate the existence of a billing error of which he notified Defendant, he does not allege any facts suggesting that he notified Defendant of the billing error within 60 days of Defendant's transmission of the statement containing the error. *See Karadimas v. JPMorgan Chase Bank*, No. 09-CV-0589 (DLI) (RLM), 2010 WL 11626847, at *2 (E.D.N.Y. Sept. 30, 2010) (dismissing FCBA claim because the plaintiff did not allege that he notified the defendant of the error within 60 days). The Court therefore dismisses Plaintiff's claims under the TILA and FCBA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his claims under the TILA and FCBA in an amended complaint.

**B.    FCRA claims**

Plaintiff alleges that Defendant also violated the FCRA when it failed to conduct a reasonable investigation of Plaintiff's dispute. As an initial matter, the Supreme Court has held that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021)

(concluding that plaintiffs whose credit files were not disseminated to third parties lacked standing to sue for violations of the FCRA). Plaintiff alleges that his credit score was negatively impacted, but he states that he intentionally *did not* submit rental applications because he believed such applications would be rejected due to his low credit score. (*See* ECF 1, at 4.) It is unclear if Plaintiff actually sought credit from a third party, and suffered an adverse impact based on his credit score, or if he merely alleges that his damaged credit will inevitably have some effect on his future ability to do so. Plaintiff thus fails to meet his burden of demonstrating that he has standing to sue for a violation of the FCRA.

The FCRA imposes two main duties on furnishers of information: (1) a duty to provide accurate information, 15 U.S.C. § 1681s-2(a); and (2) a duty to investigate after receiving a notice of dispute, 15 U.S.C. § 1681s-2(b). Violations of the duty to provide accurate information, Section 1681s–2(a), are enforced by certain government officials—not consumers themselves. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]here is no private cause of action for violations of § 1681s-2(a)."); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 79 (W.D.N.Y. 2018) ("There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials."). Plaintiff therefore cannot sue Defendant for allegedly furnishing disputed or false information to a consumer reporting agency.

By contrast, an individual can sue a furnisher of information, such as Defendant, for violations of the duty to investigate. *See Comunale*, 328 F. Supp. 3d at 80 (holding that the FCRA "does provide for a private cause of action pursuant to § 1681s-2(b)"). The investigation duties under Section 1681s-2(b) arise only after the furnisher of financial information receives notice of the consumer's dispute from the consumer reporting agency ("CRA"). "To state a claim [under § 1681s-2(b)(1)], a consumer must show that (1) a furnisher received notice of a credit

6

dispute from a CRA (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148 (FPG), 2019 WL 162743, at \*4 (W.D.N.Y. Jan. 10, 2019). Here, Plaintiff alleges that Defendant received notice of the dispute "from Plaintiff *and/or* from one or more consumer reporting agencies." (ECF 1, at 7 (emphasis added).) It is therefore unclear whether it was the CRA or Plaintiff who notified Defendant of the dispute. If it was Plaintiff who notified Defendant of the dispute, his claim would fail. *See Jackling*, 2019 WL 162743, at \*4. Thus, even if Plaintiff had alleged facts sufficient to show standing to sue, the allegations of the complaint do not state a claim on which relief can be granted under the FCRA, and this claim is therefore dismissed.

The Court grants Plaintiff leave to replead his FCRA claim in an amended complaint that alleges facts demonstrating that he has standing to bring such a claim and facts sufficient to satisfy the standard set forth above.

## C.    Claims under state law

Plaintiff also asserts state law claims for breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress. A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental

jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under the TILA, FCBA, and FCRA, the Court grants Plaintiff 30 days' leave to amend his complaint to cure the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   March 25, 2026
         New York, New York

_____
LOUIS L. STANTON
U.S.D.J.